**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

NAGLA ABDELHALIM,                )
                                 )
                *Plaintiff,*     )
                                 )
        v.                       )        Civil Action No. 1:19-cv-858
                                 )        Hon. Liam O'Grady
AARON LEWIS, *et al.,*           )
                                 )
                *Defendants.*    )
_____)

## MEMORANDUM OPINION & ORDER

Before the Court are summary judgment motions from the remaining Defendants:

Defendants Aaron Lewis and Dinara Lewis' ("Lewis Defendants") Motion for Summary

Judgment (Dkt. 66); and Defendants Andrew McDevitt and Roxana McDevitt's ("McDevitt

Defendants") Motion for Summary Judgment (Dkt. 68). The motions are fully briefed, and the

Court dispensed with oral argument because it would not aid in the decisional process.

## I. BACKGROUND

Plaintiff Nagla Abdelhalim ("Plaintiff" or "Ms. Abdelhalim") brings suit against the

Lewis and McDevitt Defendants alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3601

*et seq* ("FHA" or "Act"), Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985, and

common law conspiracy. Dkt. 32 ("Am. Compl."). Specifically, ten Counts remain at bar: (I-

IV) Violation of FHA, 42 U.S.C. § 3617, against Aaron Lewis, Dinara Lewis, Andrew McDevitt,

and Roxana McDevitt, respectively; (V-VIII) Violation of 42 U.S.C. § 1982, against Aaron Lewis,

Dinara Lewis, Andrew McDevitt, and Roxana McDevitt, respectively; (IX) Conspiracy in Violation

of 42 U.S.C. § 1985(3), against Mr. and Mrs. Lewis and Mr. and Mrs. McDevitt; and (X) Common

Law Conspiracy Against Mr. and Mrs. Lewis and Mr. and Mrs. McDevitt.[1]

## II. MATERIAL UNDISPUTED FACTS

The Parties reside on Garden Stone Lane in Fairfax, Virginia 22031 in consecutive,

detached single-family houses. Plaintiff's residence is situated immediately between the houses

of the Lewis Defendants and the McDevitt Defendants, and Plaintiff's lot shares a pipe-stem

driveway with the Lewis Defendants. The Parties' houses are on a cul-de-sac. Dkt. 67, Lewis

Statement of Undisputed Material Facts ("L-SUMF") ¶ 8. Further, the Parties are all members of

the Armistead Park Homeowners' Association ("HOA"). Ms. Abdelhalim purchased the

residence at 8921 Garden Stone Lane on September 18, 2017 and has lived there since moving in

shortly after the purchase. Am. Compl. ¶ 11. Plaintiff's brother, Haitham, lives with her. Ms.

Abdelhalim is an Egyptian immigrant, is Muslim, and wears a Hijab in public. *Id.* ¶ 9.

The Lewis and McDevitt Defendants both lived in their respective houses at 8920 and

8919 Garden Stone Lane when Plaintiff moved to the cul-de-sac in 2017; they continue to be Ms.

Abdelhalim's immediate neighbors. Mrs. Lewis is a Russian immigrant, Muslim, and

Caucasian. Dkt. 69, McDevitt Statement of Undisputed Material Facts ("M-SUMF") ¶ 7. At all

relevant times, the Lewis Defendants lived with their two children under the age of eight as well

as Mrs. McDevitt's mother. *Id.* ¶ 8. Mr. McDevitt is Caucasian and Roman Catholic/Christian.

*Id.* ¶ 10. Mrs. McDevitt is a Bolivian immigrant, is Hispanic/Latina, and is Roman

Catholic/Christian. *Id.* ¶ 11. The McDevitt residence also included at all relevant times, their

daughter, who was under thirteen years of age. *Id.* ¶ 12.

---

[1] Ms. Abdelhalim initially named the Armistead Park Homeowners Association ("HOA") as a
defendant in the matter and alleged Count XI against that defendant. Plaintiff then stipulated
dismissal of her claims against the HOA, which the Court entered January 15, 2020. Dkt. 61.
Count XI is thus moot and absent from the pending motions.

Plaintiff rented the basement portion of her house to short-term tenants, using Airbnb at times to advertise its availability. *See, e.g.*, Dkt. 77, Plaintiff Statement of Facts in Dispute ("PSF–L") ¶¶ 1-3. From March 2018 to early May 2018, the listing appeared on Airbnb, and Ms. Abdelhalim had approximately nine tenants rent the basement space for spans of three to twenty-eight days at a time between March 2018 and June 2018. M-SUMF ¶ 19; *see also* L-SUMF ¶¶ 11-13. Defendants complained of increased vehicular traffic, overall safety concerns, and reduced visitor parking as a result of the rentals. M-SUMF ¶ 20; L-SUMF ¶ 14. Ms. Abdelhalim does not view her short-term rentals as creating safety concerns for her neighbors. *Id.* 21; Nagda Abdelhalim Deposition, Oct. 21, 2019 ("NA Dep."), 68:7-69:4. Indeed, it is undisputed that Plaintiff had another property outside Armistead Park in Silent Valley, which she routinely rented on a short-term basis in 2018. M-SUMF ¶ 23.

On May 5, 2018, Mr. and Mrs. McDevitt, Mrs. Lewis, and Jenna Fox went to Plaintiff's house and stood together at her front door;[2] they knocked, and when Ms. Abdelhalim opened the door, she remained inside. *See* PSF-L ¶¶ 5-8; L-SUMF ¶¶ 17-27; M-SUMF ¶¶ 25-28. The neighbors at Plaintiff's doorstep voiced their concerns surrounding the rental activity they had observed at Ms. Abdelhalim's residence and asked that she stop renting the space. *Id.* Mr. McDevitt and others cited the rules of the HOA and a Fairfax County ordinance in arguing that the rentals were illegal. L-SUMF ¶ 22; M-SUMF ¶ 25. The interaction lasted approximately forty minutes, during which time Mrs. Lewis asked Plaintiff how much money she made and where she worked. L-SUMF ¶¶ 25-26. Mr. McDevitt, with Mrs. Lewis in agreement, said he would make Ms. Abdelhalim's life miserable. *Id.* ¶ 29. At some point during the interaction,

---

[2] Plaintiff refers to this fourth person, Jenna Fox, as "Gina Fox." Dkt. 77 (PSF-L) ¶ 5. The McDevitt Plaintiffs refer to this fourth person as "Jennifer Fox." Dkt. 69 (M-SUMF) ¶ 25. The Court is unsure of the correct name, but considers Jenna, Gina, and Jennifer as the same person.

Plaintiff's brother, Haitham, came to the door and addressed the neighbors, asking them to leave. Lewis PSF ¶ 8. Plaintiff installed security cameras shortly after this encounter. *Id.*

Approximately ten days later, all Parties attended their Armistead Park HOA meeting. Mr. McDevitt formerly served on the HOA Board of Directors, but left that role in 2016. M-SUMF ¶ 18. He expressed interest in safety issues in the neighborhood for several years, including opposition to short-term rentals in March 2016, well before Plaintiff moved to the neighborhood. *Id.* At the May 15, 2018 HOA meeting, Defendants voiced concerns about the short-term rental activity; Mr. McDevitt spoke of safety concerns. L-SUMF ¶ 22. Plaintiff indicated that she removed her Airbnb listing and would stop the short-term rentals. *See* M-SUMF ¶ 30; PSF-L ¶ 10. The HOA minutes from the meeting indicate that the Board deferred to Fairfax County's law and regulations, as the HOA had not memorialized its own short-term rental policy. Pl.'s Ex. 86 ("Fairfax county rules specifically do not provide for [short-term rentals] – except for 'Bed and Breakfasts', with a very specific definition . . . Board discussed putting a notice in the newsletter.").

Plaintiff took down the rental listing for her house by the time of the HOA meeting, but had existing commitments to tenants to fulfill in May and June. PSF-L ¶ 10. Ms. Abdelhalim went forward with the remaining rentals, which extended through June 15, 2018. PSF-L ¶¶ 9-10. Defendants were not amenable to any rentals past the May 5, 2018 visit to Plaintiff's home, nor the May 15 HOA meeting, where Plaintiff said she would stop the short-term rentals. PSF-L ¶ 10 (citing NA Dep. 84); *see* Andrew McDevitt ("AM") Decl. ¶ 34, Ex. J at 1 (May 27, 2020 email from Mr. McDevitt to the HOA Board, stating "[w]e do not care if she 'felt' that she must uphold any commitments made to any/all future AirBnB guests of hers. That is not our problem."). Defendants witnessed additional tenants beginning May 23, June 12, and June 22,

respectively.  M-SUMF ¶¶ 33-34; Pl.'s Ex. 41 at 2.  Later, in July 2018, Plaintiff rented to a long-term tenant, which was permitted by the HOA.  PSF-M ¶¶ 29-30.

On May 27, 2018, Mr. McDevitt wrote a detailed complaint regarding Plaintiff's short-term rentals and sent it to the HOA Board via an email to HOA Secretary Travis Collins; in response, Mr. Collins stated his belief that the Board agreed with Mr. McDevitt, and that "short term rentals should not be happening in our neighborhood . . . [i]f you see any additional activity – please do submit that evidence to us."  AM Decl. ¶ 34, Ex. J at 1.  As there was nothing specific to the HOA that addressed short-term rentals at that time, Mr. Collins directed Mr. McDevitt to take the "extra-HOA information" to the county.  *Id.*

On June 19, 2018, Mr. McDevitt indeed submitted complaints to Fairfax County authorities regarding Plaintiff's short-term tenants, indicating illegal rentals at both the Armistead Park and the Silent Valley properties.  M-SUMF ¶ 36; PSF-M ¶ ¶ 20-21.  Due to these complaints, county inspectors made twelve visits, collectively, to Plaintiff's two properties. PSF-M ¶ 21.  On July 1, 2018, Plaintiff rented the basement to two individuals for a year-long term, which is not prohibited in Fairfax County.  M-SUMF ¶ 37.  Upon inspection of Plaintiff's house on July 3, 2018, the long-term tenants resided in the basement with clear access between the basement and first floor of the dwelling.  Pl.'s Ex. 41 at 1.  This configuration did not violate the Zoning Ordinance observed at the time of inspection, and the case was closed.  *Id.*

Over an extended period of time, Defendants took numerous photos of cars and suspected tenants outside the Abdelhalim residence.  PSF ¶ 19 (citing Pl.'s Exs. 50, 52); *id.* ¶ 23. Beginning June 7 and continuing through November 2018, Plaintiff claims the Lewis Defendants parked cars to block access to the pipe stem driveway or block cars in behind the houses such that Plaintiff was forced to park her car on the street instead.  L-SUMF ¶ 55; PSF-L ¶ 20 (citing

photographs at Pl.'s Exs. 51, 53-63, 70). On June 29, 2018, either or both of the Lewis Defendants began pulling cars up to the back of Ms. Abdelhalim's house and her garage door to look inside, or pulling their vehicles within ten feet of the Abdelhalim residence, allowing a view through the back windows and door. PSF ¶ 26 (citing Pl.'s Exs. 65-67, 74-75). About early March 2019, there were tire tracks in the grass on Plaintiff's side of the pipe stem driveway, which Ms. Abdelhalim said occurred multiple times in one week. NA Dep. 136:16-138:2. Ms. Abdelhalim's brother installed a camera to cover this area of the yard, which then captured Mrs. Lewis driving over the lawn. NA Dep. 139:4-13.

The alleged harassment also occurred by phone and text message. From December 2018 through March 29, 2019, Plaintiff received a series of text messages from anonymous numbers; during that time, and through June 2019, Plaintiff also received phone calls from anonymous numbers. Dkt. 77 at 17. The text messages included demands for Plaintiff's work address and to meet and talk; the sender did not respond to Plaintiff's requests for his or her identity. Pl.'s Ex. 93. The sender also wrote, "Are you sleeping with my Husband." *Id.* A message on March 2, 2019 read, "Hey Nagla, I like for you not to park your car over there no more. park Infront of your own House. Next time it be park by my fucking house I will get it Tow away. Me and my wife is so tired of you and your family." Pl.'s Ex. 99. Another pair of messages said, "if you ever park your damn car by my house again I will fine your ass. And also have your damn car Tow away. We cant wait to you move out of our area. // when your ass go to work tomorrow me and my wife will see you. we have words for your ass." Pl.'s Ex. 100. Upon receipt of the March 2 text message, Plaintiff called the police, but ultimately asked the responding officer not to speak with Defendants on March 2. PSF-L ¶ 52. Plaintiff called the police again on March 3 due to continued alleged harassment, and the police questioned Mr. Lewis about Plaintiff's

concerns on that occasion. *Id.* ¶ 54. In February and March 2019, Plaintiff received eight calls between 8:59 p.m. and 11:02 p.m. *Id.* ¶ 51. None of the text messages referred to Plaintiff's race, color, religion, or national origin; Ms. Abdelhalim never heard anyone say anything on the phone calls or associated voicemails. L-SUMF ¶¶ 48, 50.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). The trial judge is not required to make findings of fact at the summary judgment stage. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

While the burden is on the moving party to demonstrate entitlement as a matter of law, the opposing party "must 'set forth specific facts showing that there is a genuine issue for trial.'" *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (quoting *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Courts construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 150 (4th Cir. 2012) (citation omitted).

## IV. DISCUSSION

Contrary to the assertion in her Amended Complaint that Mr. McDevitt "falsely report[ed] that she was renting the Abdelhalim Home," Plaintiff rented the basement portion of her house to short-term tenants for a period of time in 2018. Am. Compl. ¶ 34; *see generally*

Dkts. 67, 69, 76, 77 (discussing the rentals as the primary basis of the dispute). Indeed, it is the rental of Plaintiff's residential space that is the center of the instant case. Ms. Abdelhalim fails to demonstrate or produce any evidence of discriminatory animus as required by sections 3617, 1982, and 1985(3) of Title 42 of the United States Code. There is undoubtedly a significant dispute among neighbors underlying this case, but the claims as alleged are misplaced.

### A. **42 U.S.C. § 3617 Claim**

Plaintiff alleges that Defendants violated section 3617 of the FHA. The Act provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.[3] Courts in this district have said § 3617 plaintiffs must show: "(1) they are a protected individual under the FHA; (2) they were engaged in the exercise or enjoyment of fair housing rights; (3) Defendants were motivated in part by an intent to discriminate, and (4) Defendants coerced, threatened, intimidated, or interfered with Plaintiffs on account of their protected activity under the Fair Housing Act." *Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864, at *4 (E.D. Va. Nov. 17, 2017) (citing *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 732 (E.D.Va.1992)).

To establish the third element, intentional discrimination, a plaintiff may prove the intent either directly or indirectly. *E.-Miller v. Lake Cty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir.

---

[3] Plaintiff states she is a member of a protected class because of her national origin—Egyptian—as well as her race, religion and color. Dkt. 77 at 20. Simultaneously, when the Lewis Defendants submit that "Mrs. Lewis is Muslim," Plaintiff responds, "DISPUTED as immaterial." Dkt. 77 at 16. Plaintiff thus undermines her own claim of religion-based discrimination, implying that her Middle Eastern origin is the material, operative characteristic at the center of the alleged discrimination. By her own account, then, the fact that Plaintiff is Muslim carries little weight in the § 3617 analysis.

2005). Indirect discrimination claims are governed by the same burden-shifting framework required for Title VII actions under a disparate treatment claim, as laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Bradley v. Carydale Enter.*, 730 F. Supp. 709, 718 (E.D. Va. 1989). Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination before the burden shifts to defendant to produce legitimate, nondiscriminatory reasons for its actions; if the defense meets that burden, the plaintiff must have a fair opportunity to show that the claimed legitimate reasons are, in fact, pretext. *See McDonnell Douglas*, 411 U.S. at 802-04.

In construing the reach of the FHA, "[t]he language of the Act is broad and inclusive." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972). Indeed,

> A Section 3617 claim does not require a substantive violation of Sections 3603–3606. *Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 528 (6th Cir. 2013); *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) (en banc); *United States v. City of Hayward*, 36 F.3d 832, 836 (9th Cir. 1994). A claim may arise before or, as here, after a plaintiff acquires housing. *Bloch*, 587 F.3d at 782.

*Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112 (3d Cir. 2017). Indeed, allegations of interference with the enjoyment of a dwelling involve conduct that is, by nature, post-sale. *See Bloch v. Frischholz*, 587 F.3d 771, 781 (7th Cir. 2009).

"Neither the cases nor the legislative history of § 3617 attempt to define the minimum level of intimidation or coercion necessary to violate this statute. Therefore, the Court assumes that the words of the statute—'coerce, intimidate, threaten or interfere'—mean exactly what they say." *People Helpers Found., Inc. v. City of Richmond*, 781 F. Supp. 1132, 1136 (E.D. Va. 1992). Interference within the meaning of § 3617 may result when there is "harassment, provided that it is 'sufficiently severe or pervasive' as to create a hostile environment." *Revock*, 853 F.3d at 113 (quoting *Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010)) (citing *Honce v.*

*Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993)). "Harassment that intrudes upon the 'well-being, tranquility, and privacy of the home' is considered particularly invasive." *Revock*, 853 F.3d at 113 (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (citation omitted)). While courts have not settled on exact definitions, a claim specific to interference generally requires a plaintiff to prove: "(1) that the plaintiff exercised or enjoyed 'any right granted or protected by' Sections 3603–3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct. *Revock*, 853 F.3d at 112-13 (quoting 42 U.S.C. § 3617) (additional citation omitted).

Plaintiff alleges that a reasonable jury could find, both directly and indirectly, that Defendants "intimidated, threatened, and interfered with Plaintiff and created a hostile environment." Dkt. 77 at 21; Dkt. 76 at 21. The conduct was sustained over a period of fourteen months, and took several forms, including the neighbors' visit to her house on May 5, 2018, where she felt intimidated as Defendants' voices were raised and they aggressively questioned her, and a hostile environment at the HOA meeting.[4] Ms. Abdelhalim describes the Defendants' observations of visitors at her residence to have been "threateningly glaring and leering." PSF-L ¶ 26. The Lewis Defendants' pattern of behavior blocking the shared driveway, driving up to the

---

[4] Plaintiff repeatedly mischaracterizes Mr. Collins' email to Ms. Abdelhalim regarding the HOA meeting, not only manipulating Mr. Collins' words, but also implying the *opposite* of what he said. In Plaintiff's statement of facts, she quotes Mr. Collins' email to say, the "conflict seems to be the most acrimonious[] I have participated in several HOA boards." PSF ¶ 25. In Plaintiff's argument, Mr. Collins' email is again represented to say that the "'conflict seems to be the most acrimonious' he had participated in as an HOA board member." Dkt. 77 at 22. The first instance is erroneous, as it omits a period to blend sentences; both are misleading. The email from Mr. Collins as provided in Plaintiff's Exhibit 12 states that, of a few conflicts in the HOA at that time, "this conflict seems to be the most acrimonious. I have participated in several HOA boards, *and what you've described is unfortunately not unique to your situation, or even our HOA. In fact, I'd have to say our HOA is relatively calm compared to others*." Pl.'s Ex. 12 at 1-2 (emphasis added).

Abdelhalim residence to look inside, and driving over Plaintiff's lawn, Plaintiff contends, amounts to coercion, threats, intimidation, or interference under the Act.

The Lewis Defendants argue that Plaintiff fails to show both the necessary conduct and the necessary intent or animus to state a § 3617 claim. Claiming that §§ 3603, 3605-06 are inapplicable in the instant case, the Lewises address § 3604 as the basis for the claim. Further limiting the basis of the claim, Plaintiff lived in her house for the duration of the time at issue. Because there was no real estate transaction, the portion of § 3604 Plaintiff must rely upon, the Lewis Defendants say, is "[to] otherwise make unavailable or deny[] a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

Regarding the fourth element of the claim, the allegations based on unlawful conduct, the Lewis Defendants maintain they cannot be liable because neither Mr. nor Mrs. Lewis coerced, intimidated, or threatened Plaintiff, or interfered with the use of her residence. The Lewis Defendants rely on the plain meaning of these words—coerce, intimidate, threaten, interfere—as the statute does not define them. They contend that Mr. McDevitt's May 5, 2018 statement, that he would make Plaintiff's life miserable, and Mrs. Lewis' affirmation of it, was only related to short-term rentals. They argue there are no facts "to show that this single statement would put fear into a person of reasonable fortitude." Dkt. 67 at 12 (referencing *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018) (holding that he plaintiff "fail[ed] to point to any conduct that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of her protected right under the FHA.")). The Lewises do not expressly deny blocking cars, driving on grass, being present at home to observe and take photographs, or participating in both the May 5 visit to Plaintiff's house (Mrs. Lewis only) and the May 15 HOA meeting. But this does not constitute conduct cognizable under the FHA, the

Lewis Defendants claim. The statute requires severe or pervasive harassment by neighbors to create a hostile environment, the Lewises argue, and that calls for more than a quarrel among neighbors, like theirs. *See Revock*, 853 F.3d at 113; *Bloch*, 587 F.3d at 783.

Furthermore, the third element, or the necessary discriminatory animus, is also absent, the Lewis Defendants say. The claims of discriminatory intent are entirely speculative, they continue, as no one ever said anything about Plaintiff's race, color, religion, or national origin. Dkt. 67 at 15. To begin, Mrs. Lewis is Muslim. Ms. Abdelhalim claims that the May 5, 2018 meeting on her front doorstep revealed that her neighbors suspected ties to terrorism. This accusation was based solely on questions about sources of income, who was living or staying in the house, and for how long. *Id.* (citing NA Dep. 67:11-17). Mr. Lewis was not present at Plaintiff's house on May 5, 2018, and Mrs. Lewis submits she said nothing that could be construed as invidiously discriminatory. As such, the Lewis Defendants submit the § 3617 claims against them fail.

The McDevitt Defendants likewise assert there is no support for the claims that they coerced, intimidated, or threatened Plaintiff, or interfered with the use of her residence. The only in-person interactions related to this dispute between the McDevitt Defendants and Plaintiff were the May 5, 2018 discussion at Ms. Abdelhalim's front door and the HOA meeting on May 15, 2018. They maintain this is not enough to show any unlawful conduct. Further, while Mr. McDevitt submitted complaints to Fairfax County about Plaintiff's rental activity—one for each of her properties in the area—he argues that the county's resulting inspections and compliance process cannot be attributed to him as individual conduct. Dkt. 69 at 12-13.

Further, the McDevitts claim that none of the statements or conduct attributed to the McDevitt Defendants implicated Plaintiff's protected class status. Though Mr. McDevitt made it

clear to Plaintiff at her house on May 5, 2018 that he was upset because of Plaintiff's use of her residence, and that short-term rentals were prohibited, his message did not involve race, color, national origin, or religion at any time.   Dkt. 69 at 14; *see Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685, 699 (E.D. Va. 2013) (finding no causal nexus between "mean and insulting" conduct and race-based or other form of discrimination).

As to element four, the record may support conduct that arises to a level of intimidation and interference cognizable under § 3617.   Indeed, Defendants acted outwardly and consistently in opposition to Ms. Abdelhalim's use of her property, and courts have recognized plaintiffs being "photographed . . . [in] an intimidating manner." *People Helpers Found.*, 781 F. Supp. at 1135.   But that need not be evaluated further, as Plaintiff's prima facie case fails to satisfy a fundamental element, or, factor three, of any FHA claim: unlawful discrimination.

The discriminatory intent factor concerns Plaintiff as a member of protected classes.   She dedicates the majority of her case, however, to her neighbors' conduct as it relates to the short-term rentals, the basement space of the Abdelhalim residence where the rentals occurred, and the short-term tenants themselves.   Disputes and conduct related to the shared pipe-stem driveway are relevant to the vehicular traffic associated with Plaintiff's use of her residence.   None of this activity suggests or demonstrates discrimination against Plaintiff, as an individual—separately from the rental activity—let alone against her race, color, religion, or national origin.[5]   Plaintiff concedes that, prior to the May 5 interaction at her front door, there were no issues with her neighbors; presumably, therefore, there were no outward signs of discrimination before the short-

---

[5] The anonymous texts and phone calls that occurred from December 2018 through the first half of 2019 are the only overt acts alleged that could be construed as efforts to harass or attack Plaintiff as an individual, unrelated to the rental activity on her property. If, *arguendo*, Defendants were responsible for the messages and calls, there is still no reference—neutral or discriminatory—to a protected class under the Act. Consequently, the text messages and calls are not actionable here. As such, the admissibility of the related evidence need not be resolved.

term rental dispute. *See, e.g.*, NA Dep. 48:5-7 (regarding the Lewises, "Q: As far as you're concerned, things were peaceful and amicable up to [May 5]? A: Yes."). Even after long-term tenants were occupying the basement space at Plaintiff's house, the alleged conduct was focused at the rental unit, where the Lewis Defendants drove close to the house and allegedly peered into the basement windows. This further supports the idea that Defendants' motive was based on the rental business and the use of the rental space rather than any characteristic individual to Ms. Abdelhalim.

The support Plaintiff offers for this claim is generally unpersuasive. Without any express unlawful discrimination or slurs of any kind, Plaintiff's claims certainly cannot stand where "we do not think Congress wanted[] to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004). Viewing the facts in the light most favorable to Plaintiff, the underlying facts may amount to more than a quarrel, and the allegations indicate much more than an isolated event. But it is difficult to compare this case to some of the authority Plaintiff cites when the instant claims couch the entirety of the discrimination in neutral pretext. Here the Parties debate the meaning behind the word "safety," which Plaintiff identifies as the main code word for animus. In *Pryor v. United Air Lines, Inc.*, the plaintiff received a note in her company mailbox that included:

> "N*** Tag—Federal N*** Hunting License," declaring that the holder was "licensed to hunt & kill N***S during the open search hereof in the U.S." The tag also purported to give "the holder permission to hunt day or night, with or without dogs." A hand-drawn image of a person hanging from a pole or a tree appeared on one corner of the document, along with the words "this is for you."

*Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 490–91 (4th Cir. 2015) (internal citations omitted). Not only is this an egregious example of overt racism, but also the defendant is the plaintiff's employer. There is no material similarity between the types of discrimination in much of the

case law cited and the allegations before the Court, both in severity of the discrimination and the transparency of motive. *See, e.g.*, *Halprin*, 388 F.3d at 328 (connecting repeated vandalism against a Jewish plaintiff to a religious motive where the perpetrator wrote "H-Town" for "Hymie Town" to accompany property destruction).

Plaintiff also relies in part on *Frazier*, but the facts are distinguishable. In *Frazier*, "Plaintiffs . . . alleged incidents, which occurred after a physical altercation that involved the use of racial slurs, [and] are sufficient circumstantial evidence to infer a racial animus." 2017 WL 5560864, at *5. There, the allegedly harassing conduct followed racial slurs, whereas the conduct at bar followed a verbal confrontation free of any slur, or even neutral, reference to race or any other protected class. Furthermore, the court found in *Frazier*, "Plaintiffs adequately allege that Defendants deprived them of their right to hold property on the basis of race: they fear for their safety and the safety of other guests, and specifically family members and guests who are African American." *Id.* at *6. Tellingly, the race, ethnicity, religion, or national origin of Plaintiff's guests never figure in the underlying case – Defendants only note that they are strangers to the neighborhood. M-SUMF ¶ 20; L-SUMF ¶ 14. Much of the focus remained on vehicles on the premises – to wit, text messages between Mr. Lewis and Mr. McDevitt identify supposed guests by their cars rather than individuals: "[Aaron Lewis:] Yesterday evening a second red vehicle from Ohio arrived," and "[Andrew McDevitt:] You think the Ohio car is a 'guest' too?" Pl.'s Ex. 33 at 4.

Additional support for Plaintiff's claims, in fact, weakens them. For instance, in *Mazzocchi v. Windsor Owners Corp.*, the plaintiff was not only evicted from the residence entirely, but also targeted as the direct subject of a discriminatory slur because of her disability. 204 F. Supp. 3d 583, 618 (S.D.N.Y. 2016). The mere presence of the mentally disabled plaintiff

in *Mazzocchi* is what motivated the discrimination; things were amicable among the Parties for a time before May 5, 2018, thus there is little support for Plaintiff's mere presence to be the motive. The equivalent of the *Mazzocchi* plaintiff—the target of the conduct—in the instant case is the short-term rental activity. The race, religion, color, or national origin of the target at bar does not figure in the case, as the target does not belong to any class.

Upon careful review of the record, the Court cannot locate evidence that raises a genuine issue of material fact as to whether the Lewis or McDevitt Defendants discriminated based on Plaintiff's "race, color, religion . . . or national origin."[6] 42 U.S.C. § 3604(a). Plaintiff fails to show that Defendants' discontent as to rentals was pretextual, as her arguments rely on unsupported inferences and conclusions. To illustrate, Plaintiff disputes the Lewis Defendants' statements of fact on no fewer than nine occasions by citing to twenty-five paragraphs of her own proffered facts. She countered, "**See PSMF at ¶¶ 5-8, 10, 12, 14, 19, 20, 21, 22, 26, 27, 34, 38, 41, 43, 44, 48, 50-54, 57.**" Dkt. 77 at 15-17 (emphasis original). These twenty-five paragraphs are cited to rebut facts such as "Plaintiff has never heard Mr. Lewis express a view on Plaintiff's religion or ethnicity," and "Plaintiff has never heard Mrs. Lewis express a view on terrorism," yet none of the paragraphs offer any suggestion that the Defendants' facts are false. Of the twenty-five paragraphs, only one is arguably relevant because of a conclusory statement

---

[6] The only overt reference to Plaintiff in a protected class is limited to a gesture regarding her Hijab. This suggests discrimination based on her Muslim faith. As discussed, *supra* note 3, Plaintiff's allegations based on religion do not carry much weight. Further, the reference to the Hijab is inadmissible evidence. Mr. O'Connell, member of the HOA board, is alleged to have pointed to Plaintiff's head scarf at the HOA meeting on September 18, 2018 when discussing the alleged discrimination by Defendants. Am. Compl. ¶ 115. The Armistead HOA is no longer a defendant in this case, and the Court is not aware that Mr. O'Connell has been deposed in this case or has otherwise testified to this encounter. None of the remaining defendants are alleged to have been present for Mr. O'Connell's action, and Plaintiff has not referred to this event in her summary judgment pleadings. Indeed, while it is the only conduct that expressly refers to a protected class, Mr. O'Connell's gesture is absent from Ms. Abdelhalim's argument. The Court thus declines to consider it.

from Ms. Abdelhalim: "[t]he nature of the questions and manner of questioning [led] Plaintiff to believe Defendants thought she was being supported by some kind of terrorist group." PSF-L ¶ 7. Even Plaintiff's conclusory statement—Defendants thought she was being supported by some kind of terrorist group—is vague.

What is more, that conclusion is the fulcrum of the alleged discrimination, without which the remainder of Defendants' conduct cannot support the instant claims. Because Plaintiff fails to allege facts related to a protected class, and "[w]ithout any indication of words or other actions implicating race, [Plaintiff's] conclusions are insufficient to present any causal nexus, let alone one that might infer [Defendants] acted with racial animus." *Best Med.*, 937 F. Supp. 2d at 699 (additional citations omitted) (failing to find causation in a 42 U.S.C. § 1981 claim).

Genuine disputes and unlawful discrimination are not always coexistent, and Plaintiff fails to show that they coexist here. Counts I-IV cannot survive, as there are no genuine issues of material fact under § 3617.

### B. **42 U.S.C. § 1982 Claim**

"To succeed on a [42 U.S.C. § 1982] claim, a plaintiff must demonstrate that defendant impeded or restricted the use of his or her property on the basis of their race." *Frazier*, 2017 WL 5560864, at *5 (citing *Bradley*, 730 F. Supp. at 717 (citing *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981)). Similar to § 3617, "[s]ection 1982 is broad in scope." *Bradley*, 730 F. Supp. at 717. Plaintiff alleges, largely in tandem with her FHA claim, that a reasonable jury could find race-based discrimination under § 1982, as the short-term rental and neighborhood safety claims from Defendants were pretextual.

The Lewis Defendants generally assert that the conduct in this case does not rise to a cognizable level under § 1982. A § 1982 claim "deals only with racial discrimination and does

not address itself to discrimination on grounds of religion or national origin," thus its scope is narrower than § 3617. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968). Cases based on the right to hold property—as opposed to the sale or rental of property—"involve extreme acts of violence or outrageous harassment," like yelling race-based insults before detonating a bomb, cross-burning, firebombing or throwing Molotov cocktails, and vandalism by white supremacists among efforts to start a race war. *See Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003) (race-based insults and intimidation by U.S. Military M21 Flash Simulator bomb detonation); *Byrd v. Brandeburg*, 922 F. Supp. 60, 64 (N.D. Ohio 1996) (racially-motivated firebombing of porch and kitchen); *Johnson v. Smith*, 878 F. Supp. 1150, 1154-55 (N.D. Ill. 1995) (cross-burning and racial slurs); *United States v. Three Juveniles*, 886 F. Supp. 934, 943-44 (D. Mass. 1995) (vandalism and property destruction including "all Jews must die" and swastikas on synagogue walls).

As with the § 3617 claim, the Lewis Defendants reiterate that there are no facts indicating race-based discrimination. Ms. Abdelhalim's discrimination claim is wholly unsupported, the Lewises maintain, because the only facts she used to allege invidious discrimination were from a conversation about short-term rentals and safety, questions about sources of income, and inquiries as to who lives in Plaintiff's house. Dkt. 67 at 18. The alleged conduct at issue is concerned with short-term rental activity, and Plaintiff's conclusions and allegations, they say, are baseless.

Similarly, the McDevitt Defendants argue that the § 1982 claim fails because of a lack of racial animus. Mrs. McDevitt is a Hispanic immigrant who works in a diverse professional community, and Defendants say there is no evidence that the McDevitts ever discriminated or had motive to do so. Dkt. 69 at 15-16. Further, the McDevitt Defendants argue legitimate, non-

discriminatory reasons for their conduct that are not pretextual, which would defeat Plaintiff's claim under the *McDonnell Douglas* framework. Ms. Abdelhalim claims that Defendants' safety concerns were "code" for suspicions of terrorism, but the McDevitts maintain the legitimacy of their nondiscriminatory motivation: preventing unwanted effects of short-term rentals. *Id.* at 18.

Indeed, and again, the fundamental element of a § 1982 claim—racial discrimination—is missing from the record and Plaintiff fails to allege a prima facie case of discrimination. The entirety of the discrimination claim remains rooted in Plaintiff's own conclusion that "[t]he nature of the questions and the manner of questioning [led] Plaintiff to believe Defendants thought she was being supported by some kind of terrorist group." PSF-L/M ¶ 7 (citing NA Dep. 56-60). As stated above, the facts do not support this assertion, which itself is vague. What is more, Plaintiff does not provide any comparators to suggest that Defendants might treat other neighbors differently if they were to host short-term tenants in the cul-de-sac. These facts do not approach the level of obscene discriminatory statements or violent acts of intimidation seen in other § 1982 claims. For instance, Ms. Abdelhalim parked her car in a different location when the Lewis Defendants' cars blocked the shared driveway, whereas the *Whisby-Myers* plaintiff moved her car from its usual spot after her neighbor detonated a bomb, as he "tried to blow [Whisby-Myers'] ass up" and told the police to "take this n*** bitch to jail." 293 F. Supp. 2d at 848-49.

At bottom, Plaintiff uses Defendants' references to "safety" as a connection to what she calls "some kind of terrorist group," and that necessarily implies racial discrimination; in effect, Plaintiff offers her own conclusions and asks the Court to make *additional inferences* to extrapolate a § 1982 claim. The Court declines to do so. While this does not make light of the intimidation and harassment Plaintiff alleges, the instant allegations remain untethered to the

racial discrimination the statute requires.  There is no genuine issue of material fact and Counts V-VIII must fail.

### C. 42 U.S.C. § 1985 Claim

"The law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995) (quoting *Buschi v. Kirven,* 775 F.2d 1240, 1257 (4th Cir.1985)) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)).  A § 1985 requires a plaintiff to show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons*, 47 F.3d at 1376–77 (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir.1989), *cert. denied*, 493 U.S. 817 (1989)).  Further, "[i]n order to state a § 1985 conspiracy claim, Plaintiff must show that the co-conspirators were each 'motivated by a specific class-based, invidiously discriminatory animus.'" *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 541 (D. Md. 2014) (quoting *A Soc'y Without a Name v. Va.*, 655 F.3d 342, 346 (4th Cir. 2011)).

A plaintiff bears a heavy burden in establishing a § 1985(3) claim, as the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion." *Simmons*, 47 F.3d at 1377. Section 1985 claims have been "'specifically rejected [] whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting

facts.'" *Jenkins v. Trustees of Sandhills Cmty. Coll.*, 259 F. Supp. 2d 432, 445 (M.D.N.C. 2003), *aff'd*, 80 Fed. App'x 819 (4th Cir. 2003) (quoting *Simmons*, 47 F.3d at 1377).

The Lewis Defendants contend there is no conspiracy claim here because there is no evidence of a meeting of the minds or of discriminatory animus. Regarding the meeting of the minds, the Lewises say, "[a]t best, the evidence in this case shows parallel conduct amongst a group of neighbors regarding disputes about short-term rentals and a pipe-stem driveway." Dkt. 67 at 21. Parallel conduct alone does not suggest a conspiracy, *A Society Without a Name v. Virginia*, and the rental and driveway disputes do not suggest race, color, religion, or national origin as a motive. 655 F.3d 342, 346 (4th Cir. 2011). Evidence of discriminatory animus falls far short, the Lewis Defendants argue, given that the discriminatory animus cannot be inferred for a § 1985(3) claim; even at the motion to dismiss stage, unlawful intent in conspiracy claims requires specific, nonconclusory allegations. *Gooden v. Howard Cty., Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992). They note these claims, then, are surely deficient at summary judgment.

Similarly, the McDevitt Defendants deny the conspiracy claims for a lack of racial or class-based animus. Dkt. 69 at 19 (citing *Hughes v. Ranger Fuel Corp., Div. of Pittston Co.*, 467 F.2d 6, 10 (4th Cir. 1972); *Shooting Point, LLC v. Cumming*, 238 F. Supp. 2d 729, 739 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004) ("[A] claim is fatally defective [where] no allegation has been made that the acts of the defendants were motivated by class-based animus."). Mr. McDevitt and Mr. Lewis communicated by text message, and Defendants interacted socially, though there is no indication that the motive for conduct related to Plaintiff was anything but the use of her property for rentals. No factual allegation supports Plaintiff's alleged racial or class-based conspiracy.

Here, Plaintiff's claims do not satisfy the requirements of a § 1985(3) claim. The allegations lack not only factual particularity to show a meeting of the minds, but also a nexus to unlawful discriminatory intent. The instant case falls squarely within the category of claims the Fourth Circuit has "specifically rejected . . . whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d 1377. There is "'little more to support [the conspiracy claim] than the respective racial identities of the individuals involved.'" *Id.* (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 970 (4th Cir. 1992) (en banc)). As such, Plaintiff fails to establish a genuine issue of material fact under § 1985(3), and Count IX fails.

D. **Common Law Conspiracy Claim**

All federal claims herein fail, thus the Court declines to exercise supplemental jurisdiction over the common law conspiracy claim pursuant to 28 U.S.C. § 1367. As such, Count X cannot survive.

## V. CONCLUSION

For these reasons, the Lewis Defendants' motion for summary judgment (Dkt. 66) is hereby **GRANTED**, and the McDevitt Defendants' motion for summary judgment (Dkt. 68) is hereby **GRANTED**. Judgment will enter by separate order.

It is **SO ORDERED**.

June 17, 2020
Alexandria, Virginia

_____
Liam O'Grady
United States District Judge